

# HOSSLEY EMBRY
Attorneys and Counselors

Chris Peirce
Attorney
Email: cpeirce@hossleyembry.com

October 21, 2021

*Via Fax 888-536-7183*
Antonio Coria
Safeco Insurance Company of Indiana
P.O. Box 515097
Los Angeles, CA 90051-5097

      Re: Randy Petter and Adrienne Petter
         434 N. 3rd St.
         Wallis, TX 77485
         Claim Number: 900-044735127-01
         Policy: OY6719937
         Date of Loss: 04/28/2020 (as assigned by Safeco)

Dear Mr. Coria:

## NOTICE UNDER TEX. INS. CODE.SECTION 541.154, 542A.003 AND APPLICABLE LAW

   Our firm represents Randy Petter and Adrienne Petter (collectively, "Petter") regarding their claim for damages to their property located at 434 N. 3rd St., Wallis, Texas 77485 ("Property"). As you are aware, Petter made a claim against their insurance policy for hail and wind related damages within their policy period with Safeco Insurance Company of Indiana ("Safeco") under Policy OY6719937 ("Policy").

   The Property sustained a significant hail and wind event on April 28, 2020, or at all times during the Policy period, causing extensive damage to the roofing system and exterior of the Property. The photographs document the obvious widespread damage to the Property from the covered perils of hail and wind from the storm:

Phone 214.390.2349 • www.hossleyembry.com

TYLER • DALLAS • DENVER

EXHIBIT C









Petter reported this storm and the damage it caused to the Property to Safeco. Safeco acknowledged receipt of the claim and commenced its investigation.

Safeco assigned Antonio Coria ("Coria") as claims handler to adjust the claim. In turn, Coria retained ProNet Group, Inc. ("ProNet"), an engineering firm that works almost exclusively for insurance companies, to examine the Property and determine the cause of the damage. ProNet engineer Todd Perry ("Perry") inspected the Property on March 4, 2021. Shockingly, ProNet determined that the damage to Petter's roof was not caused by wind or hail. Rather, ProNet advised Safeco that the roof damage was "the result of historical foot traffic, tree debris impacts, and the quality of repairs/installation." In reaching these conclusions, Perry willfully disregarded evidence of hail and wind damage that was apparent to the naked eye. Further, Perry performed zero testing aside from a mere "eyeball" test to determine the cause of the extensive damages.

ProNet purported to research the National Oceanic and Atmospheric Administration's ("NOAA") National Center for Environmental Information database in reaching its summary conclusion that Petter's damages were not caused by wind or hail. However, NOAA reports, by themselves, are not warranted and largely come from spotters and government reporting. The web site contains the following disclaimer: "**An effort is made to use the best available information but because of time and resource constraints, information from these sources may be unverified by the NWS. Therefore, when using information from Storm Data, customers should be cautious as the NWS does not guarantee the accuracy or validity of the information. In cases of legal proceedings, Federal regulations generally prohibit NWS employees from appearing as witnesses in litigation not involving the United States.**"

Further, ProNet cited to the Community Collaborative Rain, Hail, and Snow Network ("CoCoRaHS") database and found that "no reports of hail were recorded" at the Property in April or May 2020. However, CoCoRaHS reports are questionable at best, as evidence by the following quote from CoCoRaHS's web site: "CoCoRaHS (pronounced KO-ko-rozz) is a **grassroots volunteer network of backyard weather observers** of all ages and backgrounds working together to measure and map precipitation (rain, hail and snow) in their local communities. By using low-cost measurement tools, stressing training and education, and utilizing an interactive Web-site, our aim is to provide the highest quality data for natural resource, education and research applications. **The only requirements to join are an enthusiasm for watching and reporting weather conditions and a desire to learn more about how weather can affect and impact our lives**" (emphasis added). Thus, ProNet's determination that "no reports of hail were recorded" does not mean that hail did not fall at the Property on April 28, 2020—it simply means that the "grassroots volunteer network of backyard weather observers" did not record any hail in April or May of 2020.

On April 5, 2021, Perry completed his engineering report and submitted it to Safeco.[1] Although Coria had never inspected the Property himself, he purported to rely entirely on ProNet's report in making its final decision to deny Petter's claim.

---

[1] My clients possess a copy of ProNet's engineering report, which is dated April 5, 2021. However, Mr. Coria's April 6, 2021 denial letter cites to an engineering report "dated March 19, 2021." To the extent a March 19, 2021 version of the ProNet engineering report exists, please provide my office with a copy of the same.

4

On April 6, 2021, Safeco, through Coria, denied the claim in its entirety. In the denial letter, Safeco cited only to ProNet's engineering report for its conclusion that the cause of Petter's damages was simply a combination of foot traffic, tree debris impacts, and the quality of repairs/installation. This was despite the fact that ProNet only reviewed the two, questionable at best, weather reports in reaching its determination. Further, upon information and belief, no Safeco representative had ever even stepped foot on Petter's Property. Accordingly, Safeco breached its Policy obligations and committed various insurance code violations in denying the claim.

Dismayed by Safeco's inadequate findings of covered damages, Petter retained the services of a licensed public adjuster in the State of Texas, Ester Hernandez ("Hernandez") of National Claims Negotiators ("NCN"), to render an accurate estimate of the storm-related damage to the Property. After a thorough inspection of the Property on April 13, 2021, Hernandez determined the damage to the Property warranted replacement cost coverage of **$106,735.51** under the terms of the Policy. *See* attached estimate and photographs. Ms. Hernandez's estimate and evaluation came equipped with photographs of the damage. Ms. Hernandez's estimate was submitted to Safeco on or around April 29, 2021.

After being notified of NCN's involvement, and being provided with NCN's inspection and photographs, Safeco simply remained steadfast in its denial without conducting any testing and with direct evidence of hail and wind damage contradicting its position.

On May 5, 2021, NCN requested that Safeco "reinspect" the Property (although Safeco had never personally inspected the Property). On May 11, 2021, Coria issued correspondence denying NCN's request. Just as he did in his original denial letter, Coria cited only to ProNet's findings and offered no explanation for the denial.

Safeco, in denying the claim without conducting a reasonable investigation, did not take any samples and failed to conduct any testing to determine the cause of the extensive damages. The inadequacy of the Safeco inspection and investigation is further evidenced by its failure to give Petter an adequate explanation as to why Safeco believed there was no wind or hail damage to the shingles. Safeco never explained what it believed caused the obvious damage to the roof surface as documented and photographed by NCN.

Although Safeco was aware of Petter's clear and present hail and wind damage and the reported damage was covered by the Policy, Safeco decided the claim should be denied without conducting a thorough and reasonable inspection of the damages. Ultimately, Safeco determined that the damages were not covered under the Policy.

Safeco, along with its personnel, failed to thoroughly review and properly oversee the work of the assigned claims representative and adjuster, Coria, ultimately approving an improper adjustment of, and an inadequate and improper denial of Petter's claim. Safeco misrepresented that Petter's damages were not covered, when the losses in fact were clearly covered causes of loss during the Policy's period. Specifically, Safeco represented to Petter that none of the damage to the Property was caused by a covered cause of loss within the Policy period without any proper investigation when, in fact, Safeco knew, or with a reasonable investigation should have known, that the cost of repairs to all the damages was a clear covered loss.

5

Together, Safeco and Coria set out to deny properly covered damages. Because of this unreasonable investigation and failure to provide proper coverage for the damages sustained, Petter's claim was improperly adjusted, and Petter was denied payment to fully repair the property to its pre-storm condition. To this date, Petter has yet to receive any payment under the insurance policy.

Undoubtedly, you are aware of your liability to our clients under the Texas Insurance Code, which specifically covers unfair claims settlement. Specifically, you are liable to Petter for the following violations of the Texas Insurance Code:

(1) Misrepresenting and/or failing to discuss with Petter pertinent facts or policy provisions relating to coverage as an issue, in violation of TEX. INS. CODE ANN. § 541.060(a)(1);

(2) Failing to acknowledge, with reasonable promptness, pertinent communications with respect to the claim arising under the policy, in violation of TEX. INS. CODE ANN. § 542.003(b)(2);

(3) Failing to adopt reasonable standards for prompt investigation of the claim arising under the policy, in violation of TEX. INS. CODE ANN. § 542.003(b)(2);

(4) Not attempting in good faith to effectuate prompt, fair and equitable settlement of the claim submitted in which liability has become reasonably clear, in violation of TEX. INS. CODE ANN. § 541.060(a)(2)(A);

(5) Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy, in relation to the facts or applicable law, for denial of the claim or for the offer of a compromise settlement, in violation of TEX. INS. CODE ANN. § 541.060(a)(3);

(6) Failing to affirm or deny coverage of claim to a policyholder within a reasonable time after proof of loss statements have been completed, in violation of TEX. INS. CODE ANN. § 541.060(a)(4); and

(7) Refusing to pay the claims without conducting a reasonable investigation based upon all available information, in violation of TEX. INS. CODE ANN. § 541.060(a)(7).

Furthermore, the delay in payment to Petter is also in violation of Texas Insurance Code §542.055, *et seq.*, thus triggering liability on your part to pay the amount of the claim, plus additional damages of 5% percent per annum interest added onto the post-judgment variable interest rate determined under Texas Finance Code Section 304.003 and reasonable attorney's fees.

Because the insurance industry recently passed laws very favorable to its own interests, we are required to provide this notice by law and before our firm has had an opportunity to fully

discover all facts and damages related to the claim. To the extent that written notice of the claim is required either under the Policy, or by law, to be entitled to any benefit whatsoever, this letter is intended to provide such notice to the extent it has not already been adequately given.

The level of detail in this notice letter is largely the result of House Bill 1774, also known as the "Hail bill," which was passed in September 2017 by tort reformers and the insurance lobby. It does not just apply to Hail claims, but rather any lawsuit against an insurance company related to any claim for damages caused by a "force of nature." Unfortunately, it places more restrictions and hurdles on policyholders who have no choice but to sue insurance companies.

One of those hurdles is that if the damages set forth in this notice are too high, or exaggerated, the attorney's fees our clients recover at the end of the day are reduced or eliminated. Meaning if the clients guess too high, in this notice letter, the clients may not recover attorneys' fees and are not made whole. Because we do not wish to punish the clients and are duty-bound to try and make our clients whole, our initial notice of damages always errs on the side of being low and conservative.

Another one of the hurdles created by the new law is that the fees we claim are owed in this notice must be calculated "by multiplying the number of hours actually worked by [our firm], as of the date [this] notice is given and as reflected in contemporaneously kept time records, by an hourly rate that is customary for similar legal services." Unlike insurance defense firms, our firm does not bill by the hour, track time in most of our cases, or send invoices to clients. Most of our clients do not have the financial resources of a company like Safeco and cannot pay a lawyer by the hour. Thankfully, Texas allows clients to hire firms on a contingent fee basis and recover those fees if they are successful in litigation. Petter signed a contingent fee contract with our firm, meaning a percentage of any recovery in this case is paid to our firm, then expenses are deducted, then Petter receives the balance. Needless to say, even if a settlement offer were extended today, that included the attorney's fees on an hourly basis as set out in this notice, it would fall short of making our clients whole.

We understand that under the new Texas laws you may ultimately show this notice letter to a judge and jury. Unfortunately, the new insurance-friendly Texas laws do not also permit us to show a jury your company's settlement offers, or other related settlement discussions, including our efforts to try and settle the case with your company. A jury should know that our clients would accept a reasonable settlement offer today. In fact, we would prefer that above litigating the case. If, however, a jury ever comes to see this notice letter, it will only be because your company chose to continue its course in unreasonably delaying, denying, or underpaying the claim, and we had no option other than to litigate the case before a jury of our peers. Because our firm is not paid by the hour, it is never in our interest, or our clients' interest, to unnecessarily drag out litigation.

Accordingly, our clients seek an amount owed of **$315,000.00**, which includes the amount of actual damages of **$106,735.51** less any applicable deductible as evidenced by the attached estimate, knowing violations of the Texas Insurance Code as referenced herein, pre-judgment interest and attorney's fees reasonably incurred in asserting the claim which are $6,300.00 and continuing to accrue. The attorney's fees calculated at the time of this notice are calculated at the rate of $350/hour for eighteen hours.

This notice is made in the spirit of compromise. You should not construe it as a demand, liquidated or otherwise, primarily because you may have information that is not available to us or our clients, and which may be material to the calculation of our clients' damages. This notice provides you the opportunity to resolve this matter amicably and in its entirety in accordance with the statutory guidelines and to provide any information not yet disclosed by you relative to the valuation of my clients' damages.

This correspondence will also serve as notification in accordance with Texas Civil Practice & Remedies Code § 38.001, *et seq.*, you may be required to pay reasonable attorney's fees due to your failure to substantially perform as per the material terms of the insurance contract entered with Petter. Such payment is a result of Petter's retention of our legal services to pursue their remedy for damages, and it would be paid in addition to the amount of a valid claim for contractual benefits and costs.

With respect to the claims under TEX. INS. CODE ANN. §§ 541, 541.061, 541.152, and 542A.003 the law provides you (61) days from the receipt of this correspondence to respond. With respect to the remaining claims of our clients under TEX. INS. CODE ANN. §§ 542.055 *et seq.*, the common law (breach of the duty of good faith and fair dealing and any others such as fraud arising out of your actual conduct), as well as for breach of contract, we hereby extend to you the same 61 days from the receipt of this correspondence to respond.

As always, we are willing to sit down and discuss the claim with Safeco or any person with the authority to speak on behalf of Safeco to see if there is a way to resolve this dispute. We believe it is best to try and resolve a claim early or at least discuss the likelihood of resolution before incurring additional time, expenses and attorney's fees, if all parties are willing to participate in good faith.

We are hopeful that Safeco will sit down to discuss the issues and complaints Mr. and Mrs. Petter have regarding the handling of their insurance claim. In the event you refuse to attempt to settle this matter or refuse to negotiate in good faith or otherwise to prevent a settlement of this matter, we expect our clients to recover their actual damages, along with additional damages, all available punitive damages, prejudgment interest, costs, and attorney's fees.

We trust you will immediately respond, in writing, to this notice correspondence. From this point forward, we are the only contact for you or your attorney regarding this matter.

This notice was given to claimants, Mr. and Mrs. Petter, in accordance with applicable law. Further, Mr. and Mrs. Petter fully permit Safeco an opportunity to inspect the damaged property if Safeco requests an inspection within 30 days of receiving this Chapter 542A pre-suit notice.

If you have any questions regarding this matter or need additional information, please feel free to contact this office. However, please do not contact Mr. or Mrs. Petter either orally or in writing without prior express written permission.

Thank you for your attention to this matter.

Very truly yours,

Chris Peirce

CPP/mcp